**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THE OHIO BELL TELEPHONE COMPANY,** | : | |
| **Plaintiff,** | : | **CASE NO.** |
| **v.** | : | **JUDGE** |
| **LOCAL 4340, COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO** | : | **COMPLAINT** |
| **Defendant.** | : | |

## NATURE OF CASE

1. This is an action to vacate an arbitration award issued January 21, 2021 by Arbitrator Marvin Hill regarding Plaintiff The Ohio Bell Telephone Company's ("Ohio Bell") decision to terminate the employment of Daniel Fortney ("Fortney"). Fortney is a member of Defendant Local 4340, Communications Workers of America ("CWA"), AFL-CIO ("Union"), and represented by the Union for collective bargaining. A true and accurate copy of the Arbitration Award is attached as Exhibit 1 and incorporated into this Complaint.

2. Fortney's termination arose from a fatal motor vehicle accident in September 2017 for which he pleaded guilty in court to the charge of willful or wanton disregard for public safety. While driving a Company service vehicle to a job site, Fortney drove off the road and struck a mother and her young child who were standing

on a driveway outside an apartment complex. Tragically, the impact killed the child and severely injured the mother. Two eyewitnesses observed Fortney's vehicle strike the mother and child while they were standing off the road, and the official police report of the accident likewise confirmed that Fortney's vehicle drove off of the road and onto the curb before striking the victims.

3. Fortney pleaded guilty to a charge of operating a vehicle in willful or wanton disregard of the safety of persons or property, and his criminal sentence included a period of incarceration. The Company terminated Fortney's employment due to his failure to safely operate the Company vehicle that resulted in a fatality. The Union grieved the termination decision, contending the Company did not have just cause under the parties' collective bargaining agreement ("CBA") to terminate Fortney. A true and accurate copy of the CBA is attached as Exhibit 2 and incorporated into this Complaint.

4. Arbitrator Marvin Hill found Ohio Bell did not have just cause to terminate Fortney, despite his explicit finding that Fortney was a contributing cause of the accident. The Arbitration Award requires Ohio Bell to reinstate Fortney to his prior driving position.

5. Arbitration has been long favored and encouraged by courts as a cost-effective proceeding that permits parties to achieve resolution of their disputes in an expedient manner. This is particularly true with disputes arising under collective bargaining agreements – the arbitration process benefits employers, employees, and unions alike. Ohio Bell accepts and honors arbitration awards, win or lose. It is only in

an exceptionally rare case that Ohio Bell will challenge an arbitration award in court where the arbitrator has conferred his own brand of justice such that Ohio Bell is constrained to challenge the ruling.

6. Ohio Bell seeks an order vacating the Arbitration Award because it was rendered in manifest disregard of the law and did not draw its essence from the collective bargaining agreement. Further, the Award, if not vacated, violates public policy as it requires Ohio Bell to reinstate to a driving position an employee who admitted to operating a Company vehicle in willful disregard for the safety of others that resulted in a fatality.

## PARTIES

7. Plaintiff Ohio Bell is an Ohio corporation and employer in an industry affecting interstate commerce as those terms are defined in Sections 2(2), (6) and (7) of the Labor Management Relations Act, 29 U.S.C. §§152(2), (6) and (7) and under 29 U.S.C. §185. Ohio Bell is an operating company within the AT&T family of companies.

8. The Defendant Union is an affiliate of the CWA that represents employees in the Cleveland, Ohio. The Union is an unincorporated association and a labor organization representing employees in an industry affecting commerce under 29 U.S.C. §§152(5) and 29 U.S.C. §185.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. §185(c) and 28 U.S.C. §1331.

10. Venue for this action is properly laid in this Court under 28 U.S.C. §1391(b)(2) and 29 U.S.C. §185 because the events causing this claim occurred within this judicial district, and because the Union is "engaged in representing or acting for employee members" within this judicial district. 29 U.S.C. §185.

## FACTUAL BACKGROUND

### Fortney's Employment

11. Ohio Bell employed Fortney as a Customer Service Specialist ("technician"). Fortney installed and repaired telephone and internet lines at customer sites.

12. Fortney is a member of the Union, and the terms and conditions of his employment are set forth in the parties' CBA. The CBA states the Company must have just cause to terminate the employment of bargaining unit employees, such as Fortney.

13. Safety is a top priority for Ohio Bell. The Company provides employees with quality equipment and safety practices to minimize the risk of accidents, and employees – like Fortney – are required to work safely, including driving.

14. Technicians are required to comply with the safety rules and procedures set forth in the AT&T Code of Business Conduct, Technician Expectations Policy, and relevant Environmental Health & Safety policies. Ohio Bell trained Fortney on these policies annually, including the requirement that all employees are expected to adhere to all safety practices, work safely, and use equipment properly to avoid injury to themselves and others.

15. An employee's failure to work safely, including driving, will result in discipline, up to and including termination. The level of discipline is based on whether the employee was adhering to safety procedures and/or the law at the time of the accident, and it is meted out in proportion to the severity of the circumstances.

16. If an employee performs his work with reckless or wanton disregard for life that results in serious injury or death, the Company has an obligation to and will terminate their employment.

17. As a technician, Fortney drove himself to and from job sites in a 16,000-pound service vehicle with an aerial lift affixed to the bed of the truck ("bucket truck"). As the size and weight of a bucket trucks increase the amount of time it takes to slow and/or stop the vehicles, and because the trucks do not maneuver as easily as non-commercial vehicles, technicians must exercise great caution when driving these vehicles.

**The Accident**

18. On September 25, 2017, at approximately 12:08 p.m., a woman stood outside an apartment complex at 1939 Green Road, Cleveland, Ohio with her 22-month old child in his stroller. The woman and her child stood on the apron of the complex's driveway, on the eastside of the street. At that same time, Fortney was driving a Company bucket truck north on Green Road.

19. As Fortney's vehicle approached the apartment complex, he left the road, veering onto the apron of the driveway and struck the woman and her young child –

the child was killed instantly, and the woman sustained severe injuries. The woman was transported from the scene of the accident by ambulance.

20. The City of Cleveland Police Department's Accident Investigation Unit investigated the accident and issued an official Traffic Crash Report ("Report"). The Report concluded that Fortney "operated [the vehicle] out of control, operated off the right side of the road and struck [the child] who was seated in a stroller and [the mother] who was holding the stroller and was stopped in the driveway of 1939 Green Road, waiting to cross the street."

21. The Report included eyewitness statements. One eye-witness observed: "I [saw] a white utility truck run up on the sidewalk hitting a woman and child. The truck drove off the sidewalk and then drive[] into the bushes on the other side of the street."

22. A second eyewitness observed: "There was a lady and her baby about to cross the street as well, that was standing in the middle of the driveway. A construction truck then started speeding down the hill and hit the baby and the woman. The woman's body flew by a tree and the truck lost control and went into trees that was not too far from the bus stop. The baby's body was not too far from the road, it was on a curb . . . ."

23. Fortney did not return to work following the accident. He took a leave of absence and received short-term disability benefits under the Company's disability plan through September 24, 2018.

24. After Fortney's leave of absence ended, Ohio Bell placed him on a suspension pending investigation because there was a criminal action pending against him relating to the accident.

**Criminal Conviction Arising from the Accident**

25. On October 25, 2017, the City of Cleveland Prosecutor filed a criminal charge against Fortney for vehicular homicide in violation of Ohio R.C. §2903.06 for his conduct resulting in the September 25, 2017 accident.

26. On June 11, 2019, the City Prosecutor amended the charge against Fortney to operation in willful or wanton disregard of the safety or persons of property in violation of Ohio R.C. §4511.20.

27. On June 24, 2019, Fortney pleaded guilty to operating a vehicle in willful or wanton disregard of the safety or persons of property in violation of Ohio R.C. §4511.20, and the Court sentenced him to 60 days in jail.

28. Under Ohio law, willful conduct is an act done intentionally, designedly, knowingly, or purposely, or without justifiable excuse. Wanton conduct is an act done in reckless disregard of the rights of others showing a reckless indifference of the consequences to the life or health of others.

29. Fortney served his jail sentence and completed his incarceration in September 2019.

**Company Investigation of the Accident**

30. Ohio Bell also investigated the accident. A Company Asset Protection Investigator took photos of the accident scene on September 25, 2017 and reviewed a

few days later a copy of a video of the accident recorded by the apartment complex's security surveillance system. The video showed the truck operated by Fortney traveling north on Green Road, and the vehicle tilting left (driving on the right-side curb) and then striking the woman and her child. The Company did not complete its investigation until after the completion of the police department's investigation and the resolution of the criminal action against Fortney.

31. On September 11, 2019, after Fortney was released from jail, a Company Asset Protection Investigator interviewed Fortney about the accident so it could complete its investigation. Fortney had union representation at the interview. Fortney offered no information about the accident.

32. At the conclusion of its investigation, Asset Protection prepared a report of its investigation, which included, among other details, photographs of the accident scene taken by Asset Protection on the day of the accident, the Cleveland Police Department's Report (including the eyewitness statements), the video, and Fortney's statement.

**Fortney Terminated Because the Accident He Caused Resulted in Loss of Life and Severe Injuries**

33. Prior to making a decision regarding Fortney's employment, the Company held a "Union-Management Review Board" meeting under the CBA, affording Fortney and the Union the opportunity to present information they believed should be brought to the Company's attention when considering the matter. At the meeting, neither Fortney nor the Union provided any explanation for Fortney's conduct

that resulted in a fatality and his guilty plea, nor any information that might negate his culpability for the accident.

34. Based on (1) Fortney's court admission to operating the company vehicle with a willful or wanton disregard for the safety of others, and (2) the Company's investigation that showed Fortney drove off the road and struck the woman and her young child while they were standing on the driveway apron, killing the child and severely injuring the woman, the Company terminated Fortney effective November 25, 2019.

35. The Company's decision to terminate Fortney was for just cause under the CBA.

**The Arbitration Award**

36. The Union grieved under the CBA Fortney's termination.

37. On November 17, 2020, Arbitrator Hill held an arbitration hearing on the Union's grievance. The parties submitted to Arbitrator Hill for resolution the issue of whether Fortney's termination was for just cause under the CBA, and, if not, what the remedy should be.

38. At the hearing, three Company witnesses testified regarding the Company's investigation and the reasons for its decision to terminate Fortney. One of the Union's three witnesses confirmed that the woman was standing on the apron portion of the driveway when Fortney's truck left the road and struck her and the stroller. At the hearing, Fortney again failed to provide any explanation for the accident.

39. Arbitrator Hill issued his Arbitration Award on January 21, 2021. Notwithstanding the findings of the Cleveland Police Department's Report that Fortney operated his vehicle out of control and off the side of the road where he struck the woman and her young child, Fortney's guilty plea to operating a vehicle in willful or wanton disregard of the safety of persons, and the Asset Protection Report's objective findings that Fortney was driving off the road when he struck the victims, Arbitrator Hill inexplicably found Ohio Bell did not have just cause to terminate Fortney.

40. The Arbitrator relied on two letters sent to Fortney's military unit seeking leniency regarding a military reprimand issued based on Fortney's actions on September 25, 2017. Fortney's attorney in the criminal case prepared one of the letters, and the judge in the criminal case (who was never presented with any evidence) prepared the second letter six months after Fortney's termination. Although both the Union and Fortney had ample opportunity to do so, neither letter was presented to Ohio Bell for consideration in making its termination decision.

41. On the premise that he was allowed to "take judicial notice of all things reasonable and known to most individuals," Arbitrator Hill took "judicial notice": "Individuals of problematic character, as evidence by immoral or criminal conduct, would not be allowed to serve in any capacity in the military." Based on this opinion, Arbitrator Hill concluded – contrary to the September 25, 2017 accident resulting in a fatality and apparently ignoring the criminal conviction imposed on Fortney as a result of the accident – this "is not a case of an accident-prone employee who is a risk to the Company's operations or an employee who is a problem worker."

42. The Arbitrator further relied on his own speculation – contrary to the eyewitness accounts – that the woman, and not Fortney, was to blame for the accident:

> The mother, who did not testify in the arbitration proceeding (understandably so), arguably had a duty to look out for oncoming vehicles. It is not a reach to conclude that she may in fact have had a last chance duty to avoid the Grievant's vehicle. Did she look both ways before embarking from her location at point A to point B? **At best the employer has shown that the Grievant was a contributing cause of an accident that resulted in the death of a child and injury to his mother. To be sure, what is unknown in this case is whether the mother (with child in tow), by exercise of ordinary care, could have escaped injury to herself and her child.** If so, she cannot recover from her own injury, but may indeed be without a remedy against the Company and the Grievant. Bottom line here is this: The Grievant's conduct does not excuse the mother's obligation to exercise vigilance when entering an intersection, driveway, road, apron) [sic] or whatever). Black letter law holds that he who by his negligence has produced a dangerous situation is responsible for an injury resulting from it *who is without fault.* Whether the accident could have been prevented by the exercise of ordinary care of the mother is unknown, and this works in the Grievant's favor.
>
> * * *
>
> No question that the Grievant's vehicle resulted in the death of a child and injury to the mother. However, this does not excuse [the mother] from her obligation to be on the lookout for oncoming vehicles at the edge of the driveway entrance before entering the street/intersection, and during her time at the intersection.

(Exhibit 1, Arbitration Award at 26-27, Fn. 13)(emphasis added).

43. Despite finding Ohio Bell demonstrated – at the very least – that Fortney "was a contributing cause of an accident that resulted in the death of a child and injury to his mother" while operating a Company vehicle, the Arbitrator concluded Ohio Bell did not have just cause to terminate his employment.

44. The Arbitration Award converted Fortney's termination to a 60-day suspension and reinstated Fortney to his prior driving position.

## COUNT ONE

## THE ARBITRATION AWARD SHOULD BE VACATED BECAUSE IT WAS IN MANIFEST DISREGARD OF THE LAW

45. Ohio Bell incorporates paragraphs 1–44 as if rewritten here.

46. Federal courts are empowered to vacate an arbitration award if it is rendered in manifest disregard of the law, meaning the arbitrator refused to heed to an applicable legal principle clearly defined and not subject to reasonable debate. *Gibbens v. OptumRx, Inc.*, 778 Fed. Appx. 390, 393 (6th Cir. 2019).

47. Under Ohio law, a guilty plea is an admission of all the elements of a formal criminal charge. It has the force and effect of a jury verdict and is deemed a confession of the charge for all purposes. *State v. Bibler,* 2014 Ohio App. LEXIS 3313, *9 (Ohio App. Dist. Aug. 4, 2014)(citing *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969)).

48. Fortney pleaded guilty in a court of law to operating the Company's vehicle with willful or wanton disregard for the safety of persons, and the court convicted him for that confession.

49. Arbitrator Hill disregarded the well-established doctrine of collateral estoppel. In support of the holding that the Company did not have just cause to terminate Fortney, Arbitrator Hill reasoned that Fortney "was not convicted of a crime nor did he enter a plea to a crime," and described Fortney's plea as "legal fiction." The arbitration record, however, is replete with evidence of Fortney's guilty plea; Arbitrator Hill's statement on this point is simply false and counter to the record.

50. This conclusion is a manifest disregard of the fact that Fortney pleaded guilty and of well-settled law that a guilty plea admits all the elements of the formal charge. Therefore, the Arbitration Award must be vacated.

**COUNT TWO**

**THE ARBITRATION AWARD SHOUD BE VACATED BECAUSE IT FAILED TO DRAW ITS ESSENCE FROM THE CBA**

51. Ohio Bell incorporates paragraphs 1–50 as if rewritten here.

52. Courts are empowered to vacate an arbitration award where the award fails to "draw its essence" from the collective bargaining agreement and, instead, dispenses "the arbitrator's own brand of industrial justice." *Int'l Union of Elec. Workers, Local 791 v. Hurd Corp*., 7 Fed. Appx. 329, 333 (6th Cir. 2001).

53. The CBA provides that Ohio Bell "will act with just cause in taking any disciplinary action including dismissal * * * of any employee."

54. Determining just cause requires two considerations: (1) whether the employee is guilty of misconduct; and (2) if so, whether the discipline imposed is reasonable under the circumstances. *Illinois Bell Telephone Co. and IBEW Local 21 (Devencia)*.Whether the union or the arbitrator would have acted differently is not at issue under a just cause standard, as long as the employer's action was not arbitrary or without basis in fact.

55. The Arbitration Award is substantially based on facts that (1) did not exist or were not known to the Company at the time of its decision to terminate Fortney; and (2) were not part of the evidentiary record.

56. Arbitrator Hill gave no consideration to the CBA on which Fortney's termination was based. Rather, the Arbitrator dispensed his own brand of justice, basing his decision on (1) Fortney's lay opinion that his plea agreement was not an admission of guilt; (2) his speculation – contrary to the eyewitness accounts - that the woman was likely culpable for her injuries and the death of her young child; (3) his inexplicable conclusion that Fortney did not plead guilty to the offense with which he was charged; (4) two letters submitted to Fortney's military Brigadier General that were never submitted to the Company when it was investigating the accident, during the Review Board meeting, or at any time before the arbitration hearing; and (5) his "judicial notice" that the military does not permit individuals who engage in immoral or criminal conduct to serve, and, therefore, Fortney is not "accident-prone" and does not pose "a risk to the Company's operations."

57. Because the Award fails to draw its essence from the parties' CBA, it should be vacated.

## COUNT THREE

## THE ARBITRATION AWARD SHOULD BE VACATED BECAUSE IT VIOLATES PUBLIC POLICY

58. Ohio Bell incorporates paragraphs 1–57 as if rewritten here.

59. An arbitration award is not enforceable if it conflicts with a well-defined federal or state public policy. *Oakwood Healthcare, Inc. Oakwood Hosp. Employees Local 2568,* 615 Fed. Appx. 302, 308-09 (6th Cir. 2015).

60. Ohio public policy requires businesses to safeguard the public. That includes not retaining an employee whose history of criminal, tortious, or otherwise dangerous conduct, about which the employer knows, would jeopardize public safety through his work duties.

61. Public policy also favors protecting public safety and human life.

62. Concluding that AT&T did not have just cause to terminate Fortney who pleaded guilty in a court of law to operating the Company's vehicle with willful or wanton disregard for the safety of persons that caused a fatality is contrary to the valid and important interest in protecting public safety and human life and, therefore, violates public policy.

63. Maintaining Fortney in a driving position in light of his previous motor vehicle accident that caused a fatality and resulted in a guilty plea and conviction jeopardizes public safety and, therefore, violates public policy.

64. Requiring Ohio Bell to hold open a job for Fortney who was convicted of a crime for actions while on company time that resulted in a fatality violates public policy.

65. Therefore, the Court should vacate the Arbitration violates clearly defined public policy.

**PRAYER FOR RELIEF**

Plaintiff The Ohio Bell Telephone Company respectfully prays for judgment:

A. That this Honorable Court set aside and vacate the attached Arbitration Award issued by Arbitrator Marvin Hill on January 21, 2021;

B. That this Honorable Court issue an order denying the Union's grievance and upholding the Company's decision to terminate Fortney; and

C. That this Honorable Court award Ohio Bell any other relief this Court deems just and proper.

Respectfully submitted,

*/s/ Amy Ryder Wentz*

Stephen J. Sferra (0037286)
ssferra@littler.com
Amy Ryder Wentz (0081517)
awentz@littler.com
John W. Hofstetter (0087731)
jhofstetter@littler.com
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH 44114
Telephone: 216.623.6089
Facsimile: 216.696.2038

Attorneys for Plaintiff
*The Ohio Bell Telephone Company*